# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

ANTHONY W. BENJAMIN,
    Plaintiff,

Case No. 1:18-cv-65

Black, J.
Litkovitz, M.J.

vs.

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant.

**REPORT AND
RECOMMENDATION**

Plaintiff brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial

review of the final decision of the Commissioner of Social Security (Commissioner) denying

plaintiff's application for supplemental security income (SSI). This matter is before the Court on

plaintiff's Statement of Errors (Doc. 13), the Commissioner's response in opposition (Doc. 19),

and plaintiff's reply (Doc. 22).

## I. Procedural Background

Plaintiff filed an application for SSI on August 7, 2014, alleging disability since January

1, 2013, as a result of cirrhosis due to chronic hepatitis C, synovial herniation pit of right femoral

neck, femorace tabular impingement of right hip, back pain, GI (gastrointestinal) bleeding,

clotting disorder, anemia, arthritis, platelet dysfunction, and rectal bleeding. (Tr. 214).

Plaintiff's application was denied initially and upon reconsideration. Plaintiff requested and was

granted a *de novo* hearing before administrative law judge (ALJ) Aubri Masterson. Plaintiff, his

non-attorney representative, and a vocational expert (VE) appeared at the ALJ hearing, which

was held on February 7, 2017. (Tr. 34-59). Plaintiff and the VE testified at the hearing. On

March 10, 2017, ALJ Masterson issued a partially favorable decision that found plaintiff

disabled and entitled to SSI beginning the day before he turned 55. (Tr. 12-33). Plaintiff's

request for review by the Appeals Council was denied, making the decision of the ALJ the final administrative decision of the Commissioner.

## II. Analysis

### A. Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. §§ 423(d)(1)(A) (DIB), 1382c(a)(3)(A) (SSI). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

> 1) If the claimant is doing substantial gainful activity, the claimant is not disabled.
>
> 2) If the claimant does not have a severe medically determinable physical or mental impairment - *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities - the claimant is not disabled.
>
> 3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.
>
> 4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.
>
> 5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.,* 582 F.3d 647, 652 (6th Cir. 2009) (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 404.1520(b)-(g)). The claimant has the burden of proof at the first four steps of the sequential evaluation process. *Id.; Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 548

(6th Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to

perform the relevant previous employment, the burden shifts to the Commissioner to show that

the claimant can perform other substantial gainful employment and that such employment exists

in the national economy. *Rabbers,* 582 F.3d at 652; *Harmon v. Apfel,* 168 F.3d 289, 291 (6th

Cir. 1999).

### B. The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of

fact and conclusions of law:

1. The [plaintiff] has not engaged in substantial gainful activity since the alleged onset date (20 CFR 416.971 *et seq.*).

2. Since the alleged onset date of disability, January 1, 2013, the [plaintiff] has had the following severe impairments: lumbar degenerative disc disease, femoral acetabular impingement and labral tear, brachial plexus palsy, diverticulosis and esophageal varices, hepatitis C and cirrhosis, obesity, major depressive disorder, personality disorder, and alcohol/cannabis use (20 CFR 416.920(c)).

3. Since the alleged onset date of disability, January 1, 2013, the [plaintiff] has not had an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, the [ALJ] finds that since January 11 2013, the [plaintiff] has the residual functional capacity ["RFC"] to perform light work as defined in 20 CFR 416.967(b) with the following limitations: he can frequently climb ramps and stairs. He can never climb ladders, ropes, or scaffolds. He can occasionally stoop, kneel, crouch, and crawl. He cannot balance on narrow, slippery, or erratically moving surfaces or uneven terrain. He can have no exposure to hazards, including unprotected heights and dangerous machinery. He cannot work in food preparation or provide personal healthcare. He can frequently handle, finger, and feel bilaterally. He can understand, remember, and complete simple, 1-4 step tasks. He cannot have strict production demands. He cannot interact with the general public. He requires a static work environment with changes that can be explained.

5. The plaintiff has no past relevant work (20 CFR 416.965).

3

6. Prior to the established disability onset date, the [plaintiff] was an individual closely approaching advanced age. The [plaintiff] was born [in] . . . 1961, and [in] . . . 2016, the [plaintiff's] age category changed to an individual of advanced age (20 CFR 416.963).

7. The [plaintiff] has a limited education and is able to communicate in English (20 CFR 416.964).

8. Transferability of job skills is not an issue in this case because the [plaintiff] does not have past relevant work (20 CFR 416.968).

9. Prior to . . . the date the [plaintiff's] age category changed, considering the [plaintiff's] age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the [plaintiff] could have performed (20 CFR 416.969 and 416.969a).

10. Beginning [in] January [] 2016, the date the [plaintiff's] age category changed, considering the [plaintiff's] age, education, work experience, and residual functional capacity, there are no jobs that exist in significant numbers in the national economy that the [plaintiff] could perform (20 CFR 416.960(c) and 416.966).

11. The [plaintiff] was not disabled prior to January [] 2016, but became disabled on that date and has continued to be disabled through the date of [the ALJ's] decision (20 CFR 416.920(g)).

12. The [plaintiff's] substance use disorder(s) is not a contributing factor material to the determination of disability (20 CFR 416.935).

(Tr. 18-26).

## C.  Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. §

405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by

substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v.*

*Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.,*

478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers*, 582 F.3d at 651 (quoting *Bowen*, 478 F.3d at 746). *See also Wilson*, 378 F.3d at 545-46 (reversal required even though ALJ's decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

### D. Specific Error

On appeal, plaintiff alleges as his sole assignment of error that the ALJ erred by formulating a physical RFC finding for light work that is not supported by substantial evidence. (Doc. 13). Plaintiff argues that the record in this case "sufficiently supports sedentary restrictions," and there is "ample evidence" to support his complaints of hip and leg pain as early as June of 2014. (*Id.* at 10). Plaintiff contends that while the ALJ found diagnostic tests and physical examinations were "largely unremarkable" (Tr. 21), MRI findings are consistent with plaintiff's reports of "pain and problems with prolonged activities." (Doc. 13 at 10-11).

Plaintiff also alleges that his reports of low back, hip and hand pain are "completely consistent" with x-rays taken in January 2015, which revealed degenerative changes in the hip (Tr. 677); MRI results from March 2015 confirming moderate and severe foraminal stenosis of the lumbar spine (Tr. 1329); positive signs of pain and tenderness with palpation and decreased range of motion/painful range of motion (Tr. 641, 643, 675, 676, 701, 709, 719, 930, 935, 939, 943, 962, 1290); clinical finding of abnormal gait (Tr. 718); a positive straight leg-raise test (Tr. 710); and subjective reports of low back, hip and hand pain and increased pain with weightbearing, bending, stooping, changing from a sitting to standing position, sitting, lifting/carrying heavy loads, lying on his back/side, and walking (Tr. 871, 1144, 1148, 1153, 1163, 1168, 1177, 1182). (Doc. 13 at 11). Plaintiff argues that the ALJ erroneously focused on negative examination and clinical findings rather than abnormal findings and selectively relied on treatment notes that reflect no worsening of his pain, indicate that he obtained relief with pain medications, and note that he could ambulate without difficulty. (*Id.*; Doc. 22 at 2-3). Plaintiff contends that these reports do not conclusively demonstrate his ability to perform light work, and the ALJ improperly focused on reports of improvement while ignoring "many problems" documented in the notes. (Doc. 13 at 11; Doc. 22 at 2, citing *Boulis-Gasche v. Comm'r*, 451 F. App'x 488, 493-94 (6th Cir. 2011)). Plaintiff also alleges that the ALJ did not "provide objective medical findings in support of her RFC" finding. (*Id.*). Finally, plaintiff argues that the ALJ erred by giving "great weight" to the opinions of the non-examining state agency physicians because their assessments do not take into account MRI results from March 2015, which postdated Dr. Freihofner's assessment and disclosed severe stenosis of the lumbar spine. (*Id.*, citing Tr. 24, 70). Plaintiff contends the ALJ's reliance on the non-examining physicians' reports "to the exclusion of later medical evidence actually observed by a physician and entered

6

into the record" shows that the ALJ failed to review the entire record and to account for changes in plaintiff's level of functioning over time. (Doc. 22 at 3, citing *Barnhorst v. Comm'r*, No. 1:10-cv-526, 2011 WL 3811462, at *14 (S.D. Ohio Aug. 5, 2011) (Report and Recommendation), *adopted,* 2011 WL 3812639 (S.D. Ohio Aug. 26, 2011)).

In response, the Commissioner argues that plaintiff has not met his burden to show he was unable to engage in substantial gainful activity due to a medically determinable impairment prior to the date found by the ALJ. (Doc. 19). The Commissioner argues that substantial evidence supports the ALJ's finding that plaintiff was capable of performing light work, and the fact that the record includes evidence that could support a different finding does not mean that the ALJ erred in this regard. (*Id.* at 6, citing *Woidtke v. Comm'r of Soc. Sec.*, No. 1-17-cv-656, 2018 WL 6421754, at *11 (S.D. Ohio Nov. 19, 2018)).

  *i.  The medical evidence*

In her written decision, the ALJ thoroughly reviewed the medical evidence related to plaintiff's physical impairments. (Tr. 21-24). This evidence includes imaging results, physical examination findings, and plaintiff's subjective reports of symptoms contained in the treatment notes. X-rays of the lumbar spine obtained at an emergency room visit in April 2012 disclosed a "mild degree of lumbar spondylosis and signs of degenerative disc disease involving the L3-L4, L4-L5 and L5-S1 disc interspaces." (Tr. 260). Plaintiff described the lumbosacral pain as a muscular pain that was not made worse with any movement, and he denied any trouble walking. (Tr. 262). On examination, mild to moderate lumbosacral paravertebral spasm was present but there was no evidence of lower extremity weakness, no specific sensory findings were noted, and plaintiff could dorsiflex and plantar flex with good strength. (Tr. 263). He was diagnosed with

back pain (lumbo-sacral sprain) and given back exercises to perform. (Tr. 264). Plaintiff was instructed to engage in active exercise, maintain good posture, and avoid obesity. (*Id.*).

X-rays of the right hip taken in January 2014 showed no acute osseous abnormality. (Tr. 480). Dr. Cris Casstevens, M.D., saw plaintiff at the U.C. Health Clinic for follow-up of his right hip pain in June 2014. (Tr. 962-63). He reviewed a subsequent right hip MRI at that time and diagnosed plaintiff with a right hip cam lesion and right hip labral tear. (Tr. 962). Plaintiff reported to Dr. Casstevens that he had trouble with prolonged activities and "eventually the hip starts to feel 'dead' when he tries to perform tasks, such as mowing the lawn." (*Id.*). He reported he could not take anti-inflammatory medications because of his hepatitis C. (*Id.*). On examination, there was pain with range of motion of the right hip, the examination was positive for groin pain, a "Thomas test"[1] was positive, and sensation was grossly intact. (*Id.*). Dr. Casstevens recommended conservative pain management for as long as possible due to unpredictable results of the surgical treatment options and arthroscopy, and he discussed the possibility that the right hip may degenerate and a total hip arthroplasty would be required in the future. (Tr. 963).

Plaintiff established care with Dr. Sabir Quraishi, M.D., later that same month for complaints of back pain and hip pain of more than one year and fatigue. (Tr. 640-42). Plaintiff reportedly had received local injections for the hip pain without significant improvement. (*Id.*). Plaintiff had seen a specialist for hepatitis C but had not been treated for the disease. (*Id.*). Plaintiff's lower back was tender to palpation, he had trace edema in the extremities, and his right hip was tender with painful range of motion. (Tr. 641). However, he was alert and ambulatory, there was no deformity of the leg, and neurologically he was grossly intact. (Tr.

---

[1] The Thomas test is a test designed to rule out hip flexion contracture, meaning that a positive TT is indicative of hip flexion contracture. https://www.ncbi.nlm.nih.gov/pmc/articles/PMC4991856/.

640-41). He was diagnosed with hepatitis C, cirrhosis, esophageal varices, and chronic right hip pain, and medication which included Tramadol for pain was prescribed. (Tr. 641). In July 2014, plaintiff was ambulatory with a cane, his right hip was painful with range of motion, and Dr. Quraishi prescribed oxycodone 5 mg to be taken once daily as needed in place of Tramadol, which plaintiff complained made him sick. (Tr. 643-44). Dr. Quraishi referred plaintiff to Dr. Ravi Ravinuthala, M.D., for treatment of his hepatitis C and cirrhosis. (Tr. 644).

In December 2014, plaintiff established care for right hip pain with pain management specialist Dr. Michael Danko, M.D. (Tr. 717-23). Plaintiff reported the pain had started about five years earlier and was referred to his right groin. (Tr. 717). Plaintiff reported the pain was 7/10, it was constant, and it was exacerbated by bending or stooping, sitting, and changing from sitting to standing, and it was alleviated by lying on his back. (*Id.*). On exam, plaintiff's gait was abnormal but he was in no acute distress, he was neurologically intact, he had no tenderness or paraspinal muscle spasm of the cervical spine or thoracic spine, and range of motion was normal. (Tr. 718-19). Lumbar spine range of motion was normal, straight leg-raising test was negative bilaterally, and he had no tenderness. (Tr. 719). Range of motion of the hip was restricted and he had tenderness to palpation of the anterior groin and on the trochanteric bursa. (*Id.*). Plaintiff was assessed with femoral acetabular impingement, hip degenerative joint disease, hip pain, and long-term use of opiate analgesic. (*Id.*). When seen by Dr. Quraishi for follow-up later in the month, plaintiff complained of persistent pain in the right hip and lower back. (Tr. 701-03). On exam, he was alert, he ambulated without difficulty, and range of motion of the right hip was painful. (Tr. 701).

Plaintiff presented to the emergency room in January 2015 with left hip/leg pain. (Tr. 675-79). Plaintiff reported that he had experienced hip problems for approximately nine months

9

and had felt a pop a few days earlier followed by a pain involving his left hip that he rated as 10/10, which was worse with movement. (Tr. 675, 677). On physical exam, plaintiff had some tenderness in the left hip region and "[s]omewhat decreased range of motion secondary to pain." (*Id.*). Bilateral straight leg raise test results were negative, bilateral plantar and dorsiflexor movements were normal, and patellar reflexes were symmetric. (Tr. 676). X-rays of the left hip were negative for fracture, dislocation or soft tissue abnormality. (Tr. 676, 677). X-rays of the lumbar spine showed slight curvature of the spine, intervertebral disc space narrowing at L3-L4 and L4-L5, mild facet hypertrophic changes within the lower lumbar spine, and intact SI joints. (Tr. 676, 679). In February 2015, plaintiff complained of a flare-up of his right hip pain and back pain, he had lumbar tenderness, and his right hip was painful with range of motion, but he ambulated without difficulty. (Tr. 704).

A MRI of the lumbar spine performed on March 7, 2015 showed: (1) central L4-L5 disc herniation indenting the anterior aspect of the thecal sac, and (2) moderate right and severe left L4-L5 and moderate bilateral L5-S1 foraminal stenosis secondary to concentric bulging of the disc and facet arthropathy. (Tr. 1329). Plaintiff reported to Dr. Danko on March 19, 2015 that his low back pain was "controlled on his current regimen." (Tr. 911). On examination, he was in no acute distress and his gait was normal. (Tr. 913). The oxycodone dosage was reduced at plaintiff's request because the "lumbar radicular pain is less intense." (*Id.*).

In November 2015, plaintiff reported at his pain management appointment that he had continued pain in his right hip/right groin area that worsened with weight bearing and that was exacerbated by bending or stooping, sitting, changing from sitting to standing, lifting/carrying heavy or small loads, lying on his back/side, and walking. (Tr. 871). Plaintiff reported he could do "nothing" in the way of activities due to his current treatment regimen. (*Id.*). He denied side

effects from the oxycodone but reported he was taking 5 mg three to four times daily, which helped to "keep his pain tolerable," and he needed to take four pills for relief. (*Id*.). He rated his average pain score as 7/10. On examination his gait was normal. (Tr. 873). When plaintiff was seen by Dr. Quraishi later than month, positive exam findings included reduced range of motion of the right hip and tenderness to palpation of the lower back, but plaintiff ambulated without difficulty. (Tr. 938-941).

Plaintiff's chief complaint to Dr. Danko in early December 2015 was hip pain. (Tr. 867-70). He did not complain of any adverse side effects from his medications. He was in no acute distress and his gait was normal. He was assessed with femoral acetabular impingement, degenerative joint disease of the hip and hip pain, lumbar spondylosis, lumbar disc displacement, low back pain and lumbar radicular pain. The notes reflect that plaintiff's pain was better controlled on the current regimen and no medication adjustments were made at that visit. (Tr. 869). In January 2016, Dr. Quraishi's treatment notes reflect that plaintiff was alert and ambulatory; he had lumbar tenderness and decreased range of motion; and he ambulated without difficulty. (Tr. 934-937). In March of 2016, plaintiff complained of persistent back pain going down the right leg that was being treating by Dr. Danko. (Tr. 930-33). On examination, there was lumbar tenderness and he ambulated without difficulty. Dr. Quraishi reported that plaintiff seemed to be doing "fair overall." (*Id*.). In April 2016, plaintiff reported at his pain management visit that oxycodone kept his pain tolerable. (Tr. 1182).

A MRI of the right hip performed in April 2016 showed moderate femoroacetabular impingement associated with mild to moderate arthrosis and chondromalacia; chronic nondisplaced aneterosuperior labral tear; and minimal gluteus medius tendinosis. (Tr. 1270).

At his May 2016 pain management appointment, plaintiff was in no acute distress and his gait was normal. (Tr. 1179). Plaintiff was encouraged to search for hip surgeons because although he had previously been told he was not a surgical candidate due to abnormal lab work, his lab work had improved following his treatment for hepatitis C in the last year. (Tr. 1179-80). Plaintiff was also given a prescription for physical therapy for his neck. (Tr. 1180). In June 2016, plaintiff reported that his right hip and testicle were bothering him the most and that oxycodone helped to keep his pain "tolerable," although some days were worse than others. (Tr. 1172). In July of 2016, plaintiff reported at his pain management appointment that his medication was "working to help relieve his pain," he had a lot more muscle spasms because he had been unable to obtain refills of his muscle relaxants the prior month, and he had been trying to care for his parents more, which was causing increased pain. (Tr. 1168). He reported the pain relief he obtained was "moderate" and he rated his average pain score as 8/10. (*Id.*). He was in no acute distress and his gait was normal on examination. (Tr. 1170). In August of 2016, plaintiff reported that medication continued to help his pain but he felt that walking caused his right hip pain to flare up and he had to take several breaks. (Tr. 1163). He continued to get low back pain but had become accustomed to it. (*Id.*). His chronic pain was stable and he wished to continue with his current regimen, which offered "improvement in function, activities of daily living and quality of life." (*Id.*). He reported the pain relief he obtained was "moderate" and his average pain score was 8/10. (Tr. 1165). His gait was normal and neurological exam was unremarkable. No medication adjustments were necessary as his pain was stable on the current regimen. (*Id.*).

In October of 2016, plaintiff reported no worsening of back and hip pain issues to Dr. Quraishi. (Tr. 1289). He had lumbar tenderness, but sensory findings were normal and he

ambulated without difficulty. (Tr. 1290). The pain management treatment notes for later that month reflect that plaintiff's pain was worst in his lower back and radiated down his right leg to his knee; the pain was stable with no significant changes; he was taking more medication to help him sleep; his medication helped to provide stable relief; and muscle relaxers were helping but made him drowsy. (Tr. 1153). Plaintiff had right lumbar facet tenderness on palpation and right lumbar facet loading but no SI joint tenderness, no paraspinal muscle tenderness, and negative straight leg-raising test results bilaterally. (Tr. 1155). The oxycodone dosage was increased to 7.5 mg every six hours. (Tr. 1156). The notes for that visit report that plaintiff demonstrated axial low back pain and the source was lumbar zygoapophyseal joint pain due primarily to arthritis and degeneration of the zygoapophyseal joints. (*Id.*). Plaintiff had a positive screening facet loading test. (*Id.*). He had failed conservative treatment consisting of heat, ice, chiropractor treatments, NSAIDs, muscle relaxants, physical therapy, and opioid medications. (*Id.*). An order was submitted for lumbar facet joint blocks which, if successful, would be followed by a request for radiofrequency denervation of the lumbar facet joints, which could potentially provide 6 months to 1 year of relief. (*Id.*).

Plaintiff reported in November 2016 that his pain was worst in his lower back and right hip; the pain was stable with no significant changes; he had a hard time finding a comfortable resting position but got 4 to 5 hours of consistent sleep at a time; the medication helped to provide manageable relief; and the muscle relaxers helped but at times made him drowsy so he tried to use them only at night if possible. (Tr. 1149). Plaintiff reported that although an injection had been ordered, he has a reaction to steroids and was fearful of injections in general. (*Id.*). In December 2016, Dr. Quraishi noted painful range of motion of the right hip, but neurological exam findings were normal and plaintiff ambulated without difficulty. (Tr. 1287).

13

Plaintiff reported at his pain management appointment later that month that his lower back and right hip pain was stable. (Tr. 1144). He reported that the pain radiated down his right leg to the knee and the cold weather worsened it. (*Id.*). On examination, his gait was normal. (*Id.*).

The medical record also includes evidence related to plaintiff's history of hepatitis C. A liver biopsy performed in January 2014 confirmed "chronic hepatitis C with moderate activity and cirrhosis" without focal masses. (Tr. 973-74). Plaintiff began a 24-week course of antiviral therapy in 2015, and he reported lower extremity swelling after starting the treatment. (Tr. 1033, 8/2015). Plaintiff completed the treatment in January 2016, and he reported feeling well at his September 2016 follow-up visit. (Tr. 49; Tr. 1317-18). The treatment notes state: "Since completing therapy with solvadi, he has been feeling quite well"; there were no indications of progression of liver disease; and plaintiff appeared "well-compensated [and] compliant with medications." (Tr. 1314).

Finally, the record includes evidence of wrist and hand issues. Plaintiff presented to the hospital in November 2015 complaining of hand pain and inability to control or move his right wrist or hand for the past three or four days. (Tr. 739). Obvious wrist drop with difficulty fully flexing the fingers of his right hand was noted on examination. (Tr. 742). He underwent physical therapy for the condition between December 2015 and February 2016. (Tr. 785-850). Plaintiff reported in March 2016 that "the hand seems to be working better now" and he was doing rehabilitation for it at home. (Tr. 930). Treatment records from March 2016 note neurological evidence of bilateral wrist drop that appeared improved. (Tr. 931). Plaintiff also reported in October 2016 that his grip was improving and wrist movement was better. (Tr. 1289). The review of systems included bilateral grip weakness. (*Id.*). Neurological examination disclosed "evidence of mild wrist drop which appears significantly improved." (Tr. 1290).

*ii. Medical opinion evidence*

The record does not include a medical opinion of plaintiff's physical functioning by a treating or examining physician. Non-examining state agency physician Dr. Anton Friehofner, M.D., reviewed the medical evidence and issued a physical RFC assessment on November 11, 2014. (Tr. 69-71). He assessed plaintiff as capable of performing a restricted range of light work. Dr. Friehofner based his assessment on plaintiff's diagnoses of hepatitis C, cirrhosis with esophageal varices, and chronic right hip pain. (Tr. 70). He also relied on imaging results that showed a mild degree of lumbar spondylosis, signs of degenerative disc disease of the lumbar sacral spine, right hip notching at the anterior superior labrum, and a cyst at the anterior and superior aspect of the right femoral neck. (*Id.*). Dr. Paul Morton, M.D., affirmed Dr. Friehofner's assessment on reconsideration on March 24, 2015. (Tr. 86-88).

*iii. The ALJ's decision should be affirmed*

In her written decision, the ALJ gave "great weight" to the opinions of the non-examining state agency physicians. (Tr. 23). The ALJ considered plaintiff's testimony that he is "primarily unable to work due to hand, hip, and back pain and fatigue associated with his liver condition." (Tr. 21). The ALJ restricted plaintiff to light work and included postural and environmental limitations in the RFC to address his complaints of pain and limitations. However, the ALJ found that the medical evidence did not support plaintiff's claim that he was unable to perform any substantial gainful activity before turning age 55. (Tr. 23).

The Social Security regulations vest the Commissioner with responsibility for reviewing the evidence and issuing a decision that is supported by substantial evidence. Physicians render opinions on a claimant's RFC, but the ultimate responsibility for determining a claimant's capacity to work lies with the Commissioner. *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x

15

435, 439 (6th Cir. 2010) (citing 42 U.S.C. § 423(d)(5)(B); *Nejat v. Comm'r of Soc. Sec.*, 359 F. App'x 574, 578 (6th Cir. 2009)). The ALJ is responsible for assessing a claimant's RFC based on all of the relevant medical and other evidence. *Bingaman v. Comm'r of Soc. Sec.*, 186 F. App'x 642, 647 (6th Cir. 2006). "The [Commissioner], and not the court, is charged with the duty to weigh the evidence, to resolve material conflicts in the testimony, and to determine the case accordingly." *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990); 20 C.F.R. 416.945. A decision supported by substantial evidence must stand, even if the Court might decide the question differently based on the same evidence. *Blakley*, 581 F.3d at 406.

Under the Social Security regulations, the weight to be afforded the opinion of a non-examining source depends on the degree to which the source provides supporting explanations for his opinion and the degree to which his opinion considers all of the pertinent evidence in the record, including the opinions of treating and other examining sources. 20 C.F.R. § 416.927(c)(3). Where the record does not include a treating or examining physician's medical opinion, the ALJ's decision to credit a non-examining source's opinion withstands scrutiny "[s]o long as the ALJ's decision adequately explains and justifies" the disability determination as a whole. *See Norris v. Comm'r of Soc. Sec.*, 461 F. App'x 433, 440 (6th Cir. 2012) ("While perhaps the ALJ could have provided greater detail, particularly as to why the nonexamining opinions were more consistent with the overall record, the ALJ was under no special obligation to do so insofar as he was weighing the respective opinions of nontreating versus nonexamining sources.") (citing *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007)).

Further, it is not necessary that a non-treating source's opinion be "based on a 'complete' or 'more detailed and comprehensive' case record" in order for the ALJ to credit the

opinion. *Helm v. Comm'r of Soc. Sec. Admin.*, 405 F. App'x 997, 1002 (6th Cir. 2011) (citing SSR 96-6p, 1996 WL 374180, *2). "There will always be a gap between the time the agency experts review the record . . . and the time the hearing decision is issued." *Kelly v. Comm'r of Soc. Sec.*, 314 F. App'x 827, 831 (6th Cir. 2009). The ALJ can reasonably credit the opinion of non-examining state agency physicians, despite their lack of access to the entire record, "if their conclusion that [the claimant] retained the capacity to work was supported by the totality of the medical and vocational evidence in the record." *Glasgow v. Comm'r of Soc. Sec.*, 690 F. App'x 385, 387 (6th Cir. 2017) (citing *McGrew v. Comm'r of Soc. Sec.*, 343 F. App'x 26, 32 (6th Cir. 2009) (concluding that an ALJ may rely on a non-examining state agency physician's opinion that is not based on all of the medical evidence in the record "if the ALJ takes into account any evidence that the physician did not consider")). The opinions of a non-treating source need only be 'supported by evidence in the case record.'" *Helm*, 405 F. App'x at 1002 (citing SSR 96-6p, 1996 WL 374180, *2 (July 2, 1996)). *See also Kepke v. Comm'r of Soc. Sec.*, 636 F. App'x 625, 632 (6th Cir. 2016) (where the "ALJ accords significant weight to the opinion of a non-examining source who has not reviewed the entire record," it is only necessary that the record provide "some indication that the ALJ subjected such an opinion to scrutiny."). "Absent a clear showing that the new evidence renders the prior opinion untenable," the mere fact that the non-examining physician did not have a complete record before him "does not warrant the expense and delay of a judicial remand." *Kelly*, 314 F. App'x at 831.

The ALJ evaluated the medical evidence prior to the date last insured, including the medical source opinions, and reasonably concluded that plaintiff could perform the physical requirements of light work with postural restrictions, environmental limitations, restrictions

against working in food preparation or providing personal healthcare, and limitations on handling, fingering, and feeling bilaterally. (Tr. 20, 21-24). Plaintiff argues that the ALJ's RFC finding is not supported based on the imaging results, which he alleges are consistent with "reports of pain and problems with prolonged activities." (Doc. 13 at 11, citing Tr. 677, 1329). Plaintiff also contends that pain and decreased range of motion would interfere with the ability to perform the standing and walking requirements of light work. (*Id.*, citing Tr. 641, 643, 676, 701, 719, 930, 935, 939, 943, 962, 1290). However, plaintiff has not presented any medical opinion evidence to show that his pain and decreased range of motion imposed greater restrictions on his functioning than the ALJ included in the RFC finding. Rather, plaintiff argues that the ALJ's RFC assessment lacks substantial support because the ALJ erroneously credited the reviewing physicians' opinions even though these physicians did not review the full record, including the most recent MRI results showing severe stenosis of the lumbar spine. Plaintiff further alleges that the ALJ selectively relied on normal examination findings taken from reports where other deficits were noted, reports that plaintiff's hip pain had not worsened, and reports that plaintiff's medications provided relief, which plaintiff claims do not establish an ability to perform light work.

Plaintiff has not shown that the ALJ erred in formulating a RFC for a limited range of light work and that the ALJ's non-disability determination lacks substantial support. The ALJ did not err by giving "great weight" to the opinions of the non-examining state agency physicians, who assessed plaintiff as able to perform a restricted range of light work. The ALJ sufficiently scrutinized the non-examining physicians' opinions and the medical evidence that post-dated their opinions. (Tr. 21-24). The ALJ found that the reviewing physicians' opinions were based on and were generally consistent with the medical evidence, but some additional

limitations were required due to plaintiff's hepatitis C and hand issues. (Tr. 24). Although plaintiff alleges that the ALJ erred by failing to consider evidence that supports a different medical assessment of plaintiff's functioning, the record does not include a medical opinion from a treating or examining physician who assessed plaintiff and found his functioning to be more restricted than the reviewing state agency physicians opined. This case is therefore distinguishable from *Barnhorst*, where the Court found that the ALJ erroneously failed to account for the claimant's fluctuating condition by relying on the non-examining psychologist's assessment. 2011 WL 3811462, at * 14 ("Instead of accounting for the variations of plaintiff's level of functioning over an extended period of time, the ALJ gave 'significant but not controlling weight' to the . . . assessment of . . . a non-examining state agency psychologist, in determining plaintiff's residual functional capacity to the exclusion of the evidence subsequently entered into the record that supports the treating sources' opinions.").

Further, the ALJ considered the results of the March 2015 MRI of the lumbar spine, which disclosed moderate right and severe left L4-5 foraminal stenosis. (Tr. 22, citing, e.g., Tr. 868). The ALJ cited substantial evidence to support a finding that despite the MRI results and other objective findings related to plaintiff's impairments and symptoms, plaintiff retained the ability to perform light work with restrictions to account for his pain and functional limitations. Specifically, the ALJ noted that shortly after the March 2015 MRI was performed, plaintiff reported to Dr. Danko that his back pain was controlled on his current regimen. (Tr. 22, citing Tr. 911- 3/2015). Moreover, the oxycodone dosage was reduced to twice daily at plaintiff's request at that office visit because he reported the "lumbar radicular pain is less intense." (*Id.*, citing Tr. 913). The ALJ further found that subsequent examination findings showed no

significant limitations, even though plaintiff reported increased low back and hip pain. (Tr. 22, citing Tr. 893-94- 7/2015; Tr. 1289-90- 10/2016; Tr. 1287- 12/2016).

The ALJ thoroughly evaluated the medical evidence for the period of alleged disability and gave valid reasons for the weight she afforded the assessments of plaintiff's physical functioning provided by the non-examining physicians. (Tr. 19-24). The March 2015 MRI results do not render the non-examining physicians' opinions and the ALJ's reliance on those opinions "untenable." *See Kelly*, 314 F. App'x at 831. The ALJ considered the March 2015 MRI results and other evidence post-dating their assessments, and she imposed additional functional limitations in the RFC to account for plaintiff's hepatitis C and hand impairments. (Tr. 20, 24). Plaintiff has not pointed to a medical opinion or other evidence in the record, including diagnostic test results or examination findings, that show the ALJ was bound to incorporate additional functional limitations into the RFC to account for plaintiff's impairments.

Finally, plaintiff has not shown that the ALJ selectively focused on evidence of improvement in plaintiff's condition. *See Boulis-Gasche*, 451 F. App'x at 494 (the ALJ "impermissibly substitute[ed] his own judgment for that of a physician" by finding that "some unspecified improvement in Plaintiff's mood cured any anxiety or depression that Plaintiff was experiencing," a conclusion that appeared to be "grounded in a myopic reading of the record combined with a flawed view of mental illness."). The treatment records document abnormal objective findings throughout the period of alleged disability, but they also include repeated negative clinical and exam findings. The ALJ did not ignore the abnormal findings and focus exclusively on the negative findings. The ALJ reasonably considered the objective medical findings, the non-examining physicians' opinions, and plaintiff's reports of pain and limitations as a whole and found that he retained the functional capacity to perform a limited range of light

20

work.  Plaintiff has not pointed to evidence in the record, including diagnostic test results or examination findings, that demonstrates the ALJ's finding is not unsupported.

While the evidence might support a different outcome, "a decision supported by substantial evidence must stand, even if [the court] might decide the question differently based on the same evidence." *See Blakley*, 581 F.3d at 406.  The evidence of record substantially supports the ALJ's conclusion that plaintiff could perform a limited range of light work despite his impairments.  The ALJ's decision should be upheld and plaintiff's sole assignment of error should be overruled.

### IT IS THEREFORE RECOMMENDED THAT:

The decision of the Commissioner be **AFFIRMED** and this matter be **CLOSED** on the docket of the Court.

Date:  2/8/19

Karen L. Litkovitz
United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

ANTHONY W. BENJAMIN,
    Plaintiff,

vs.

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant.

Case No. 1:18-cv-65

Black, J.
Litkovitz, M.J.

**REPORT AND
RECOMMENDATION**

## NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO R&R

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of

the recommended disposition, a party may serve and file specific written objections to the

proposed findings and recommendations. This period may be extended further by the Court on

timely motion for an extension. Such objections shall specify the portions of the Report objected

to and shall be accompanied by a memorandum of law in support of the objections. If the Report

and Recommendation is based in whole or in part upon matters occurring on the record at an oral

hearing, the objecting party shall promptly arrange for the transcription of the record, or such

portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the

assigned District Judge otherwise directs. A party may respond to another party's objections

**WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in

accordance with this procedure may forfeit rights on appeal. *See Thomas* v. *Arn,* 474 U.S. 140

(1985); *United States* v. *Walters,* 638 F.2d 947 (6th Cir. 1981).